## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWIN ROMERO                     :
      Petitioner,             :        CIVIL ACTION
                                :
      v.                     :        NO. 08-0528
                                :
JEFFREY BEARD, COMMISSIONER    :        THIS IS A CAPITAL CASE
ET AL.,                      :
      Respondents.          :

### MEMORANDUM AND ORDER

Tucker, J.                                           August \_\_\_, 2011

       Presently before this Court is Petitioner's Motion for Discovery (Doc. 20), Respondents'

Response in Opposition thereto (Doc. 23), and Petitioner's Reply (Doc. 27). For the reasons set

forth below, the Court denies Petitioner's Motion in part, and grants in part.

## I. BACKGROUND

       This is a capital habeas corpus proceeding. On March 19, 1996, a jury found Petitioner

guilty of first degree murder in the Lehigh Country Court of Common Pleas for killing David

Bolasky. Following a sentence hearing, the jury returned a verdict of death.

### A. Factual Background

       The facts underlying Petitioner's conviction, taken from the Pennsylvania Supreme

Court's decision, are as follows:

> On January 3, 1995, David Bolasky, an Allentown architect, went to an Allentown
> apartment building which he owned in order to collect rent from his tenants. Mr. Bolasky
> was robbed and killed in the third floor apartment. His body was found on January 6,
> 1995, hog-tied and wrapped in bed sheets, in the woods along a secluded road in
> Allentown. Several weeks after the murder, the tenant of the third floor apartment,
> Miguel Moreno, made statements to the police implicating himself, George Lopez,
> George Barbosa and [Petitioner] in the robbery and murder of Mr. Bolasky.

-1-

At trial, Moreno testified that he, [Petitioner], George Lopez and Barbosa devised a plan to rob and murder Mr. Bolasky, who was Moreno's landlord. Under the pretense that Moreno had rent money for Mr. Bolasky, Moreno brought Mr. Bolasky to his third floor apartment, where [Petitioner], Lopez and Barbosa were waiting for him. Moreno testified that he then left the apartment, at which time Mr. Bolasky was killed. A short time later, Moreno observed [Petitioner] and Barbosa carrying Mr. Bolasky's body, tied and wrapped in bed sheets, down the stairs and placing the body in Mr. Bolasky's van. He testified that Lopez, Barbosa and [Petitioner] then drove off and he went to clean up his apartment.

George Barbosa was also called as a Commonwealth witness. Prior to [Petitioner]'s trial, Barbosa had confessed to his role in the murder in statements made to Captain Anthony Bucarey of the Somerset County Prosecutor's Office. The confession was tape recorded by Captain Bucarey. In his confession, Barbosa also implicated [Petitioner], Lopez and Moreno in the planning and execution of Mr. Bolasky's murder. Barbosa specifically indicated that he and [Petitioner] hid in the bathroom while Moreno brought Mr. Bolasky to the third floor apartment. According to Barbosa's statement, once Mr. Bolasky was inside, [Petitioner] struck his head with a .22 pistol. Barbosa admitted that he attempted to break Mr. Bolasky's neck with a string. When this failed, however, Barbosa stated that he then put a towel around Mr. Bolasky's neck and took turns with [Petitioner] and Lopez tightening the towel around his neck until he was dead. Barbosa stated that he and [Petitioner] then wrapped Mr. Bolasky's body in bed sheets, carried it down the stairs, and placed the body in Mr. Bolasky's van. He, Lopez and Barbosa then drove to a desolate area of Lehigh County, dumped Mr. Bolasky's body and abandoned the van. Barbosa pled guilty and received a life sentence.

On the witness stand at trial, Barbosa testified that he was previously interviewed by Captain Bucarey and that he had told him that there were other people involved in the robbery and murder of Mr. Bolasky. However, while Barbosa did testify about the involvement of George Lopez and Moreno in the killing of Mr. Bolasky, he excluded any reference to [Petitioner]'s involvement and further refused to answer questions specifically regarding [Petitioner]'s involvement. In light of Barbosa's refusal to testify against [Petitioner], the Commonwealth was allowed, over defense objections, to call Captain Bucarey to the stand to read Barbosa's transcribed statements from the tape-recorded interview which explicitly implicated [Petitioner] in the murder.

Also, at trial, Daniel Lopez, [Petitioner]'s cellmate in Lehigh County Prison, testified that [Petitioner] had admitted his involvement in the robbery and murder of Mr. Bolasky to him during his incarceration. Daniel Lopez recounted that [Petitioner] had told him that he had gone to Moreno's apartment and hid in the bathroom with another individual while they waited for Mr. Bolasky to arrive. Once Mr. Bolasky arrived, [Petitioner] told Daniel Lopez that they took approximately $300.00 in cash that Mr. Bolasky was

carrying. Mr. Bolasky was then struck in the head with a gun and strangled by placing the twisting a towel around his neck. According to Daniel Lopez's testimony, however, [Petitioner] told him that he "did not agree with what was happening there." N.T., March 12, 1996, at 163. After Mr. Bolasky was dead, the conspirators searched him for additional valuables. Daniel Lopez further testified that [Petitioner] reported to him that they then wrapped Mr. Bolasky's body in bed sheets and he and another carried the body down the stairs to Mr. Bolasky's van. [Petitioner] told Daniel Lopez that he and the others then took the van and dumped Mr. Bolasky's body.

Commonwealth v. Romero, 722 A.2d 1014, 1015-16 (Pa. 1999).

**B. Procedural History**

On March 19, 1996, Petitioner was tried by a jury in the Lehigh County Court of Common Pleas and found guilty of first degree murder for killing David Bolasky after a joint trial with co-defendant George Lopez. Following a sentencing hearing, the jury returned a verdict of death against petitioner, finding four aggravating factors and no mitigating circumstances. On direct appeal, the Pennsylvania Supreme Court affirmed the petitioner's conviction and death sentence on January 5, 1999. On October 18, 1999, the United States Supreme Court denied Petitioner's petition for writ of certiorari .[1]

On October 26, 1999, Petitioner filed a pro se petition for collateral review. The Federal Community Defender's Office for the Eastern District of Pennsylvania subsequently entered its appearance in state court for petitioner. On March 28, 2000, Petitioner filed an amended petition for post conviction relief pursuant to the pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA")[2], raising twenty-six claims, including claims involving George Barbosa, Miguel Moreno, and Daniel Lopez. The PCRA petition did not contain any claims pertaining to the

---

[1]  Romero v. Pennsylvania, 528 U.S. 952 (1999).

[2]  42 Pa. Cons. Stat. Ann. § 9541, et seq.

forensic testing performed on physical evidence obtained during the investigation.

During the course of the PCRA proceedings, Petitioner requested extensive discovery, specifically requesting: polygraph results; inducements to witnesses; copies of any and all audio and video tapes produced of police interviews with Commonwealth witnesses; original Spanish language statements; Spanish language qualifications; jury selection records; Petitioner's jail records; and a general request for the Commonwealth's entire file.  In response to Petitioner's discovery requests, the District Attorney agreed to provide (1) the polygraph report of George Barbosa; (2) the details of any promises, if any, made to Daniel Lopez, Moreno and Barbosa; (3) copies of audio and video taped interviews of Moreno, Lopez and Barbosa; and (4) the Petitioner's jail records to the extent that they were in the possession of the Commonwealth.  The Commonwealth objected to Petitioner's motion for discovery of the entire file.  With respect to the remaining requests, the District Attorney represented that (1) there were no polygraph reports for any of the remaining witnesses; (2) there were no original Spanish language statements from petitioner; (3) the Commonwealth was not in possession of Spanish language qualifications; and (4) the Commonwealth was not in possession of any documents noting the race of the venire persons.  On May 18, 2000, the state trial court denied Petitioner's motion as moot because all discovery issues had been resolved.

Hearings on Petitioner's PCRA petition were held between May 25, 2000 and June 2, 2000.  On September 15, 2000, the state trial court denied Petitioner's PCRA petition.  On December 28, 2007, the Pennsylvania Supreme Court affirmed the lower court's denial of post conviction relief.[3]

---

[3]  Commonwealth v. Romero, 938 A.2d 362 (Pa. 2007).

On June 18, 2008, Petitioner filed a petition for a Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2254, which is currently pending before this Court.  Petitioner asserts that his convictions and sentences violate the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution for several reasons.

On April 29, 2010, Petitioner filed a Motion for Discovery (Doc. 20).  On July 30, 2010, Respondents filed a Response in Opposition thereto (Doc. 23).  On January 3, 2001, Petitioner filed a Reply (Doc. 27).  Petitioner's motion is now ripe for review.

## II.  LEGAL STANDARD

Petitioner's discovery motion was made pursuant to Rule 6(a) of the Rules Governing Section 2254 Cases, which provides that "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."  "[T]he rule's history makes clear that its purpose is to ensure that the facts underlying a habeas corpus claim are adequately developed, and that it is a court's obligation to allow discovery in cases in which a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief."  Johnston v. Love, 165 F.R.D. 444, 445 (1996).

In describing the role of federal habeas proceedings, the Supreme Court, in Barefoot v. Estelle, 463 U.S. 880, 887 (1983), states: "[I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence.... The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials."  Because of the nature of federal

habeas corpus, the expansive construction of relevance in civil cases-to embrace all information "reasonably calculated to lead to the discovery of admissible evidence," as specified in Federal Rule of Civil Procedure 26(b) (1), is not appropriate.  See Harris v. Nelson, 394 U.S. 286, 300 (1969) ("broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding."); Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994) ("petitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence).

Accordingly, unlike an ordinary civil litigant in federal court, a habeas petitioner is not automatically entitled to discovery under the Federal Rules of Civil Procedure.  Bracy v. Gramley, 520 U.S. 899, 904 (1997).  Under Rule 6(b) of the Rules Governing Section 2254 Cases, a party seeking discovery must make specific requests and must provide reasons for the requests.  Upon the making of such a motion, the District Court "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. Rules Governing Section 2254 Cases 6(a).  The United States Supreme Court has held that a District Court has a duty to permit Rule 6 discovery in a habeas corpus matter "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief…." Bracy, 520 U.S. at 908-09.  Appropriate discovery is especially important in capital habeas cases.  See Payne v. Bell, 89 F. Supp. 2d 967, 971 ("more liberal discovery is appropriate in capital cases where the stakes for petitioner are so high") (citing Lockett v. Ohio, 438 U.S. 586, 604 (1978)).

## III.  DISCUSSION

Before a court may determine whether good cause exists to grant discovery, the court must identify the essential elements of the petitioner's habeas claims and address whether the discovery requests are related to a constitutional challenge in the petition.  <u>Chambers v. Beard</u>, 2008 WL 7866182, *13 (M.D. Pa. 2008).  A petitioner demonstrates good cause for discovery by establishing a prima facie claim for relief, which must be specific, not merely speculative or conclusory, and by pointing to specific evidence to support her constitutional claim.  <u>Murphy v. Johnson</u>, 205 F.3d 809 (5th Cir. 2000); <u>Marshall v. Hendricks</u>, 103 F. Supp. 2d 749, 760 (D.N.J. 2000), rev'd in part on other grounds, 307 F.3d 36 (3d Cir. 2002) (citing <u>Deputy v. Taylor</u>, 19 F.3d 1485, 1493 (3d Cir. 1994)).  Furthermore, "[m]ere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review."  <u>Strickler v. Greene</u>, 527 U.S. 263, 286 (1999).  <u>See also</u> <u>Mayberry v. Petsock</u>, 821 F.2d 179, 185 (3d Cir. 1987) ("Just as bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing, … neither do they provide a basis for imposing upon the state the burden of responding in discovery to every habeas petitioner who chooses to seek such discovery.").  Plaintiff's claims must be specific and accompanied by an indicia of viability manifested in the existing record before petitioner can obtain discovery on those issues.  <u>See</u> <u>Phillips v. Stickman</u>, 298 Fed. App'x 135 (3d Cir. 2008) (because petitioner's habeas claims lacked support in the existing record, he was not entitled to discovery under Rule 6(a)).  <u>See also</u> <u>Zettlemoyer v. Fulcomer</u>, 932 F.2d 284 (3d Cir. 1991) ("bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery").

When determining whether to exercise discretion to permit discovery in federal habeas cases, courts have taken into account any lack of diligence on the petitioner's part in developing the record in state court. <u>Kane v. Tennis</u>, 2010 WL 3860465 (E.D. Pa. 2010); <u>Tedford v. Beard</u>, 2010 WL 3885207, *5 (W.D. Pa. 2010).[4]

Here, Petitioner urges the Court to permit him to conduct discovery and asserts that he has shown good cause to support his request.  According to Petitioner, discovery is necessary to enable him to prove several of his allegations of constitutional error, including allegations related to actual innocence, the suppression of exculpatory evidence, eligibility and appropriateness of the death penalty, and the ineffectiveness of Petitioner's prior counsel.[5]  Specifically, Petitioner has made the following discovery requests: (1) the complete Lehigh County Police investigation file regarding the homicide of David Bolasky; (2) any and all forensic examinations related to the murder of Mr. Bolasky, including examinations of DNA, blood tissue, and saliva; (3) complete results of any and all polygraph examinations of suspects and informants related to the Bolasky

---

[4] <u>See, e.g.</u>, <u>Hooks v. Workman</u>, 606 F.3d 715, 730-31 n.14 (10th Cir. 2010) ("Only when a petitioner diligently sought to develop the factual basis of a habeas claim in state court can he utilize the procedures set out in Rule [] 6[.]"); <u>Moore-El v. Luebbers</u>, 446 F.3d 890, 900-01 (8th Cir. 2006) (district court did not abuse its discretion in denying petitioner discovery when the petitioner failed to develop the evidence at issue in the state post-conviction proceeding); <u>Crawford v. Head</u>, 311 F.3d 1288, 1329 (11th Cir. 2002) (district court correctly denied discovery because the petitioner "failed to exercise sufficient diligence in seeking testing of items mentioned in the GBI report while in state court."); <u>Maynard v. Dixon</u>, 943 F.2d 407 (4th Cir. 1991) (explaining that "[t]he State further points out that [the petitioner] made no request to the state post-conviction court to review the files … that he now deems critical, and that he had ample opportunity to seek these documents at the state post-conviction proceeding, but chose not to. In sum, we think that [the petitioner] had adequate opportunity to explore the files of the state, and that the district court was not in error for denying [his] discovery request.").

[5] The Petition contains twenty-six claims for relief, the first of which is that "Petitioner's conviction and death sentence violate the Fifth, Sixth, Eight and Fourteenth amendments to the United States Constitution because he is actually innocent and his conviction and death sentence are the product of false testimony, government misconduct and overreaching, and ineffective assistance of counsel." (Habeas Pet. 3.)

killing, including tapes of the interviews, transcripts of the interviews, and results; (4) any and all

statements, reports, notes, memoranda, writings, transcripts or recordings regarding Michael

Moreno's interrogation; and (5) any video or audio tapes of the interrogation of suspects and

informants in the Bolasky homicide.  The Court shall address each of Petitioner's discovery

requests in turn.

### A.  Complete Lehigh County Police Investigation File

Petitioner seeks to obtain the complete record of the Lehigh County Police investigation

file and argues that the file "presumably" contains evidence supporting his contentions that he is

actually innocent and that his conviction was the product of false testimony, government

misconduct and ineffective assistance of counsel.  For the reasons that follow, the Court denies

this request.

Courts have generally held that asking for a complete record of the police investigation

file in the course of seeking discovery in connection with habeas petitions is too broad of a

request to be allowed.  See Marshall v. Beard, 2010 WL 1257632, at * 4 (E.D. Pa. Mar. 30,

2010) (citing  Commonwealth v. Williams, 732 A.2d 1167,1175 (Pa. 1999) (denying Petitioner's

request for the complete homicide file because of "both the overbreadth of the request and the

lack of specificity associating [sic] with the accompanying statement.").  Further supporting

denial of this request is the fact that, in asking for the complete homicide file, Petitioner does not

point to any *specific* evidence that would support any of his claims.  See id.  Rather, Petitioner's

request for the complete investigation file appears to be no more than an attempt at a "fishing

expedition" to find evidence that would exculpate him.  Such attempts are too speculative in

nature and do not demonstrate the good cause required under Rule 6.  See  Taylor, 19 F.3d at

1493 (quoting Munoz v. Keane, 77 F. Supp. 282, 287 (S.D.N.Y. 1991), aff'd, 964 F.2d 1295

(2nd Cir. 1992)) ("[P]etitioners are not entitled to go on a fishing expedition through the

government's files in hopes of finding some damaging evidence."); Cotto v. Murray, 2011 WL

1118724, at * 6 (W.D. Pa. Mar. 24, 2011) (construing the petitioner's request as a desire to go on

a "'fishing expedition' to see if the records contain any information to support his assertion that

he is innocent" and denying the request on that basis).  Accordingly, the Court must deny this

request.

**B.  Forensic Examination Results**

Petitioner contends that no physical or scientific evidence tied him to the crime and seeks

the results of any and all forensic examinations related to the murder of Mr. Bolasky, including

examinations of DNA, blood, tissue and saliva.  For the reasons that follow, the Court denies this

request.

Petitioner argues that he has cast considerable doubt on the reliability of the evidence

used to convict him and that the forensic evidence would (1) show that he is innocent of the

offense and (2) support the presentation of "minimal role in the offense" mitigation during

sentencing.  Petitioner acknowledges that, at trial, the Commonwealth presented a stipulation

between the parties that the forensic examiner, if brought to testify, would state that the hair and

fingernail scrapings recovered from the crime scene did not match Petitioner's DNA.  But,

Petitioner contends, the Commonwealth has never disclosed to whom the recovered hair or

fingernail scraping evidence belonged, or whether that evidence belonged to either of the

cooperating co-defendants, Moreno and Barbosa.  Petitioner argues that forensic evidence

showing that Moreno and Barbosa left DNA on the body of the victim or the blanket wrapped

around the victim would impeach the credibility of those witnesses and cast doubt in the mind of

jurors that Petitioner could have participated in the crime.  Petitioner claims the Government's

failure to disclose this potentially favorable forensic evidence violated his due process rights

under Brady v. Maryland, 373 U.S. 83 (1963).

The Government contends that Petitioner's request for discovery of forensic examinations

of the physical evidence obtained during the course of the investigation should be denied because

(1) Petitioner's federal and state post conviction petitions are completely devoid of any claims

predicated on the forensic examinations conducted in this case; (2) Petitioner has not alleged that

forensic evidence favorable to him was withheld; and (3) Petitioner has not claimed that any of

the forensic testing was done inaccurately.

In Brady, the United States Supreme Court held that the Government must volunteer

"evidence favorable to an accused on request ... where the evidence is material either to guilt or

to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.

The suppression of favorable, material evidence by the prosecution violates a defendant's right to

due process.  See id.

To prove that there was a violation of Brady, a petitioner must demonstrate that (1) the

State withheld evidence either willfully or inadvertently; (2) the evidence in question was

favorable to the petitioner either because it is exculpatory or it is impeaching; and (3) the

evidence was material, requiring that there be a reasonable probability that the withheld evidence

would have produced a different verdict.  Strickler, 527 U.S. at 281; Giglio v. United States, 405

U.S. 150, 154 (1972) (holding that "nondisclosure of [material] evidence affecting credibility [of

a witness] falls within this general rule" of Brady); Brady, 373 U.S. at 83.

Courts have routinely held that a lack of forensic evidence linking a petitioner to a crime in itself is not exculpatory.  See e.g., Chambers, 2008 WL 7866182, *5 (explaining that the absence of petitioner's DNA or the presence of a third person's DNA on the victim is not in itself exculpatory); DeJesus v. Jones, 2007 WL 2479338, at * 3 (W.D. Mich. Aug. 28, 2007) (even if forensic testing showed that DNA found under the victim's fingernails belonged to the testifying witness, and even if such evidence could possibly affect the credibility of that witness' testimony, such evidence would not exonerate the petitioner because "it would not identify [the witness] as the individual responsible for kicking the victim to death" and "would not mean that Petitioner could not have committed the murder."); Logmans v. Moore, 2005 WL 1106336, at * 16 (D.N.J. 2005) (even if blood did not belong to petitioner, "that fact alone would not serve to prove his innocence"); Steward v. Grace, 362 F. Supp. 2d 608, 622 (E.D. Pa. 2005) (even if hair located on intruder's jacket was not petitioner's, "such a finding would not conclusively establish [his] actual innocence and thus not entitle [him] to any relief").

Additionally, where withheld evidence bears on the credibility of witness testimony, the prosecution's failure to disclose this evidence does not rise to the level of a Brady violation if the evidence is cumulative of other impeachment offered at trial.  See United States v. Wilson, 481 F.3d 475, 480 (7th Cir. 2007) (reasoning that this type of cumulative evidence does have an impact on the outcome of the proceedings).

Moreover, even where withheld evidence is found to be favorable to a petitioner for impeachment purposes, unless the evidence is also found to be material, the prosecution's failure to disclose the evidence is does not constitute a Brady violation.  "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of

-12-

the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). "The materiality standard for Brady claims is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Banks v. Dredke, 540 U.S. 668, 691 (2004) (quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995)). 'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" Beard, 633 F.3d at 133 (quoting Kyles, 514 U.S. at 434). " '[C]onfidence in the outcome is particularly doubtful when the withheld evidence impeaches a witness whose testimony is uncorroborated and essential to the conviction.' " Beard, 633 F.3d at 134 n. 3.

Here, the Court agrees with the Government, and finds that Petitioner's request for the results of any and all forensic examinations must be denied. The Court reaches this conclusion having determined that Petitioner has failed to prove a Brady violation occurred because Petitioner has not proven that the results of the forensic tests would be both favorable and material. First, the Court finds that the Commonwealth did not withhold favorable exculpatory evidence in this matter. At trial, the Government stipulated to the fact that the forensic evidence did not link Petitioner to the body of the victim or the blanket wrapped around the victim. Absent evidence to the contrary, it is reasonable to assume that the jury took the stipulation into account in rendering its verdict. Nonetheless, even without the stipulation of this fact, as the Court explained in Chambers, the absence of forensic evidence linking Petitioner to the victim is not exculpatory.

Moreover, the Court finds that the Commonwealth did not withhold favorable impeachment evidence regarding cooperating defendant Barbosa. The Court finds Petitioner's argument that forensic evidence connecting Barbosa to the victim would somehow impeach Barbosa's credibility to be wholly without merit. The record indicates that evidence of Barbosa's admission that he participated in the crime was admitted at trial. Thus, Barbosa's statement to law enforcement - that he attempted to break the victim's neck with a string and, when that failed, he strangled the victim with a towel and helped to wrap the victim's body in bed sheets - was part of the evidence considered by the jury. Because Barbosa's admission clearly links him to the victim, it does not stand to reason that forensic evidence further establishing this connection would bear on his credibility at trial. Rather, such evidence would merely be cumulative of other evidence admitted.

Finally, the Court finds that although Petitioner's argument that forensic evidence connecting cooperating defendant Moreno to the victim might be impeaching, Petitioner has failed to prove that such evidence is material, that the absence of such evidence unfairly prejudiced Petitioner, and that the inclusion of such evidence would have produced a different result. At trial, Moreno testified that, while he helped to devise the plan to rob and murder Mr. Bolasky, he was not present in the apartment when the victim was killed and he did not participate in disposing of the victim's body. Forensic evidence connecting Moreno to the victim could have an impeaching effect by showing that Moreno may have played a more substantial role in the murder than he claimed. That said, the Court finds that Petitioner has failed to show that there is a reasonable probability that disclosure of forensic evidence connecting Moreno to the victim would have led to a different verdict. The Court so concludes because Moreno's

testimony was not the only evidence presented at trial from which a reasonable juror could conclude that Petitioner participated in the murder of Mr. Bolasky.  In fact, even without Moreno's testimony, there would still be sufficient circumstantial evidence implicating Petitioner in the murder, including the testimony of inmate Lopez to whom Petitioner confessed and Barbosa's statements to law enforcement concerning Petitioner's role in the murder.  Thus the Court finds that any forensic evidence connecting Moreno to the victim, while impeaching, is not essential to Petitioner's conviction and is not material.

In sum, because Petitioner has not proven that the results of the forensic tests would be both favorable and material, he has not shown that the Government's failure to disclose those results led to a <u>Brady</u> violation.  Thus, the Court must deny Petitioner's request.[6]

**C.  <u>Results of Any and All Polygraph Examinations of Suspects and Informants</u>**

Petitioner requests the complete results of any and all polygraph examinations of suspects and informants related to the Bolasky killing, including the name of any persons polygraphed, the content of the polygraph interview, tapes of the recording of the interview, transcriptions of the interviews, and the results in support of his claim that his conviction and sentence was the product of false testimony and/or government misconduct.  As an initial matter, the Court finds that Petitioner's request for "any and all polygraph examinations of suspects and informants" is too broad and fails to specify what evidence the Petitioner is seeking.  Petitioner does, however, present specific arguments to support his request to obtain the polygraph results of cooperating

---

[6]  Furthermore, because Petitioner did not raise the issue of the forensic evidence prior to the filing of his petition for writ of habeas corpus, he is now precluded from raising this argument in his habeas petition for the first time.

defendants Barbosa and Moreno, and for the reasons discussed below, the Court grants these specific requests.

## I. **Jorge Barbosa's Polygraph Results**

Petitioner argues that Jorge Barbosa provided false evidence against him.  In support, Petitioner claims that Barbosa, after being questioned by police and the prosecutor, was offered a deal that, if he passed a polygraph examination, he would be spared the death penalty.  Petitioner contends that the Commonwealth admitted it administered the polygraph exam, but that it never produced to Petitioner's counsel a complete report of the polygraph examination results. Specifically, Petitioner avers that the documentation the Commonwealth produced omitted all answers Barbosa provided, including answers to questions about the Bolasky killing and answers to the control questions against which Barbosa's truthfulness was measured.  Petitioner also contends that the documentation did not include the chart the examiner would have used to visually represent Barbosa's truthfulness for each of the answers provided.  Petitioner argues that according to the limited documentation he received, the police did not ask Barbosa about Petitioner's role in the murder nor the veracity of Barbosa's claim that Petitioner was in the apartment at the time of the murder.   This omitted evidence, Petitioner argues, is relevant to the credibility of Barbosa's statements against Petitioner.  At Petitioner's PCRA hearing, Barbosa testified that his statement implicating Petitioner was false, but he made it because the police threatened him with the death penalty, misled him into thinking that Petitioner had implicated him in the murder, and specifically told him that they wanted to hear something about Petitioner. Petitioner further argues that because the testimony of Barbosa, Moreno, and Lopez is all that the

government used to convict him, if he can show that the government engaged in misconduct and forced false testimony, he will prove his actual innocence.

In response, the Commonwealth only argues that Petitioner's request should be denied as moot because the District Attorney voluntarily provided this report during state post conviction discovery proceedings.

Here, the Court finds that Petitioner has shown good cause for discovery of Jorge Barbosa's polygraph results. The Commonwealth has not disputed that this evidence is relevant to Petitioner's claim that there was evidence of police and prosecutorial misconduct and/or knowing presentation of false evidence. Furthermore, the Commonwealth's argument that Petitioner has already been provided with this report during state post conviction proceedings is invalid if the prosecution withheld Barbosa's responses to questioning. Petitioner has pointed to specific evidence in Barbosa's PCRA testimony that, if fully developed, may substantiate his claim that his conviction violates the Fifth, Sixth, Eighth, and/or Fourteenth Amendments to the United States Constitution because it was the product of false testimony and/or government misconduct and overreaching. Accordingly, the Court finds that it is in the interest of justice that Petitioner's request for discovery of the complete results of any and all polygraph examinations of Jorge Barbosa be granted.

### ii.  Miguel Moreno's Polygraph Results

At Petitioner's trial, Miguel Moreno testified that Petitioner conspired to kill Bolasky and that Petitioner was in the apartment at the time of the murder. Petitioner alleges that Detective Joseph Hanna, who led the investigation into the Bolasky murder, recalled that during the course of the investigation, Moreno gave between eight and eleven different version of the events.

-17-

Petitioner claims that many of Moreno's statements during the investigation do not implicate Petitioner in the murder thereby contradicting Moreno's testimony at trial. Petitioner further alleges that three individuals associated with the Commonwealth represented to the state court that Moreno was given a polygraph examination about the Bolasky killing and that the examination was part of the plea deal Moreno was given. In fact, both Detective Hanna and Assistant District Attorney Holihan explicitly stated on the record at Moreno's sentencing that Moreno had passed a polygraph examination. Moreover, Petitioner argues, it is only logical that, as with Barbosa, the Lehigh County police department would have given a polygraph examination to Moreno. Petitioner claims that Moreno's polygraph results are important because, four years after Petitioner's conviction and sentence, Moreno allegedly testified that he had lied when he implicated Petitioner in the killing. Petitioner argues that the Commonwealth committed a Brady violation by failing to disclose Moreno's polygraph results which could contain evidence of perjured testimony.

The Commonwealth counters that the District Attorney already represented to the Petitioner during state post conviction discovery proceedings that Moreno was not administered a polygraph examination.

To establish prosecutorial misconduct, Petitioner must prove "(1) [the witness] committed perjury; (2) the government knew or should have known of his perjury; (3) the testimony went uncorrected; and (4) there is any reasonable likelihood that the false testimony could have affected the verdict." Lambert v. Blackwell, 387 F.3d 210, 242 (3d Cir. 2004).

Here, the Court finds that Petitioner has shown good cause for discovery of Miguel Moreno's polygraph results. As an initial matter, the Court finds that the Commonwealth's

contention that no polygraph was administered to Moreno lacks credence.  Exhibit B of the Commonwealth's Response shows that Moreno did in fact began an examination at Allentown Police Headquarters, but the examination was terminated early because Moreno indicated that he had additional information to tell the detectives.  (Resp't Resp. to Pet'r Mot. for Disc. Ex. B.) Furthermore, Exhibit B also shows that Moreno was promised, prior to trial, that the death penalty would not be imposed against him for his role in the murder in exchange for the truthful identification of the other persons involved in the murder. (Resp't Resp. to Pet'r Mot. for Disc. Ex. B.)  Thus, some portion of Moreno's polygraph examination, though incomplete, does exist.

Moreover, the Court finds that Petitioner has shown good cause for discovery of the part of Moreno's polygraph examination completed prior to the alleged termination.  The requested information relates directly to Claim I of Petitioner's petition, which asserts that the Commonwealth engaged in prosecutorial misconduct by negligently screening the evidence it elected to accept and present as the truth and acting in reckless disregard of the truth or falsity of the evidence it presented.  It appears from the record that the Commonwealth's case against Petitioner was centered, in part, on Moreno's testimony that Petitioner participated in the Bolasky murder.  Moreno, however, made several contradictory statements during the course of the investigation that would not only impeach his credibility, but could reasonably raise a question as to the veracity of his testimony at trial.  If Petitioner shows that Moreno's testimony was false and the product of prosecutorial misconduct, it would weigh in favor of overturning the sentence.  Further, as this is a capital case, discovery should be granted liberally.  Accordingly, Petitioner's Motion for Discovery of any and all of Moreno's polygraph examination records, to the extent that they exist, should be granted.

### D.  Transcripts or Recordings Regarding Miguel Moreno's Interrogation

Petitioner requests discovery of any and all statements, reports, notes, memoranda, writings, transcripts or recordings regarding Miguel Moreno's interrogation.  The Government brief in opposition to Petitioner's motion does not argue against this specific request.  As discussed infra, Petitioner claims that Moreno presented false testimony at trial implicating Petitioner in the Bolasky murder and that Moreno made several statements during the investigation contradicting his trial testimony.  The Court has already explained why Petitioner's request for Moreno's polygraph results is granted.  For similar reasons, the Court grants Petitioner's request for discovery of all statements and recordings regarding Moreno's interrogation.  Because the Commonwealth's basis for convicting Petitioner was in part centered on Moreno's testimony, Petitioner, by showing that Moreno's testimony against him was false, would prove that he is entitled to relief.  Again, because this is a capital case, discovery should be granted liberally to prevent injustice.  Therefore, Petitioner's Motion for Discovery of any and all documentation regarding Moreno's interrogation should be granted.

### E.  Any Video or Audio Tapes of the Interrogation of Suspects and Informants

Petitioner requests any video or audio tapes of the interrogation of suspects and informants in the Bolasky murder.  Because Petitioner has already requested materials related to Barbosa and Moreno, it is assumed that he is now requesting video and audio tapes of the interrogation of Danny Lopez.  Petitioner claims that the alleged admission to Lopez never happened.  In support, he claims that Miriam Lopez, the wife of Danny Lopez, stated in a sworn affidavit that she received a letter from her husband stating that, contrary to his trial testimony, George Ivan Lopez, not Petitioner, confessed to him about the murder of Mr. Bolasky. Plaintiff

argues that these documents undermine Danny Lopez's testimony and that discovery related to this witness is essential to his actual innocence claim.

Here, the Court finds that Petitioner's Motion for Discovery of any video or audio tapes of the interrogation of Danny Lopez should be denied.  First, Petitioner makes no argument as to what evidence he may find in the audio and video tapes that would support any of his habeas corpus claims.   Second, Petitioner's argument that these documents would discredit Lopez's testimony and help prove his innocence has already been considered and rejected by the Pennsylvania Supreme Court.[7]  Finally, and most importantly, Petitioner's Trial Counsel has already been provided with video and audio tapes of Danny Lopez's interrogation.  Therefore, Petitioner's Motion for Discovery of any video or audio tapes of the interrogation of suspects and informants in the Bolasky murder should be dismissed as moot.

## IV.  CONCLUSION

For the foregoing reasons, Petitioner's Motion for Discovery is granted in part and denied in part.  Specifically, Petitioner's request for discovery of the complete Lehigh County Police investigation file is denied.  Petitioner's request for discovery of the results of any and all forensic examinations is denied.  Petitioner's request for discovery of any video or audio tapes of the interrogation of suspects and informants is denied.  Petitioner's request for discovery of the results of any and all polygraph examinations of cooperating defendants Barbosa and Moreno is granted.  Petitioner's request for discovery of any and all statements, reports, notes, memoranda,

---

[7]  Both Miriam Lopez's affidavit and Danny Lopez's letter were submitted to the Pennsylvania Supreme Court during the appellate stage of Petitioner's PCRA proceedings, where the Pennsylvania Supreme Court affirmed the denial of post conviction relief.  See Commonwealth v. Romero, 938 A.2d 362 (Pa. 2007).

writings, transcripts or recordings regarding Moreno's interrogation is granted.  An appropriate

Order follows.